UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLENE CURLEY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-10-117 |
| | § | |
| SEDGWICK CLAIMS MANAGEMENT | § | |
| SERVICES, INC. PLAN ADMINISTRATOR | § | |
| OF THE HEWLETT-PACKARD COMPANY | § | |
| DISABILITY PLAN, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is Plaintiff Charlene Curley's ("Curley") Amended Motion for Summary Judgment (Doc. 19), as well as Defendant Sedgwick Claims Management Services, Inc.'s ("Sedgwick") response (Doc. 21). Also before the Court is Defendant Sedgwick's Motion for Summary Judgment (Doc. 14), as well as Plaintiff Curley's response (Doc. 20) and Sedgwick's reply (Doc. 22). Upon review and consideration of these motions, the responses and reply thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Defendant's motion for summary judgment should be granted, and Plaintiff's motion for summary judgment should be denied.

I.  Background and Relevant Facts

This is an action for long-term disability benefits under a disability insurance policy governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Doc. 1.) Defendant Sedgwick was the plan administrator for Hewlett-Packard's disability plan ("the Plan"). (Doc. 15 at 47.) Plaintiff Curley worked for Hewlett-Packard ("HP") and its predecessor companies, Digital and Compaq Computer, as a business planning

manager and a project manager for approximately seventeen years from 1988 to 2005. (Doc. 18-2 at 10.)  Curley's job demanded substantial use of the telephone and computer, requiring her to sit in the same position for long periods.  (*Id.*)  Curley alleges she became disabled from her business planning manager position in October 2004, due to carpal tunnel syndrome, cervicalgia, cervical radiculopathy, depression, and chronic pain, including upper extremity pain, left brachiolexus injury, left hand numbness, and chronic neck, shoulder, and back pain.  (Doc. 1 at 26, 17, 38, and 39.)

In October 2003, Curley began having pain in her upper right shoulder, neck and back with additional numbness and tingling in her right thigh.  (Functional Capacity Evaluation, Doc. 18-2 at 5.)  At that time, HP assessed Curley's workspace, resulting in ergonomic improvements to her chair and keyboard.  (*Id.*)  For a time, Curley's pain declined.  (*Id.*)

In January 2004, Curley first saw a physician for her pain.  (*Id.*)  In February 2004, Curley underwent carpal tunnel surgery.  (*Id.*)  Curley took short-term disability leave following the surgery until April 2004, when she returned to work.  (*Id.*)  However, Curley's pain continued and she again took short-term disability leave in September 2004 for surgery to repair the rotator cuff in her right shoulder.  (Doc. 18-2 at 1.)  After her second surgery, Curley's shoulder was immobilized for nine weeks.  (Doc. 18-2 at 5.)

Curley returned to work briefly from December 6 through 8, 2004, but was unable to fulfill her duties due to her pain.  (*Id.*)  On December 9, 2004, Curley resumed short-term disability benefits.  (*Id.*)  Curley then began seeing a pain management physician who prescribed medications and administered steroid injections.  (*Id.*)  On January 5, 2005, Curley returned to work on a part-time basis, working approximately four hours per day.  (*Id.*)  Subsequently, HP determined Curley's position required a full-time employee.  (Doc. 17 at 1.)    Curley was

terminated on June 13, 2005.  (*Id*.)

Sedgwick originally approved Curley's short-term disability benefits on October 6, 2004, following her carpal tunnel surgery.  (Doc. 18-1 at 12.)  Curley then received twenty-four months of long-term disability benefits under the Plan.  (Doc. 18-1 at 15.)  On September 26, 2006, Curley's twenty-four month's period of long-term disability benefits expired, and Sedgwick reassessed her medical condition.  (*Id*.)  After this assessment, Sedgwick renewed Curley's disability benefits through September 30, 2007.  (*Id*. at 7.)

In May 2008, Sedgwick initiated another periodic review of Curley's condition and required Curley to undergo a medical exam by an independent physician, Dr. Anthony Mellilo, an orthopedic surgeon.  (*Id*. at 5.)  Dr. Mellilo examined Curley in August 2008.  (Doc. 18 at 35.)  He rated Curley's condition a 2 on a scale from 1-10 (1 being not severe and 10 being most severe) and concluded, "the patient's physical examination is essentially normal.  The patient's main complaints are of pain which cannot be fully elicited through a routine physical examination/evaluation."  (*Id*.)  Dr. Mellilo recommended specific restrictions for Curley's working environment, including "no frequent overhead work, no prolonged repetitive wrist motions, i.e., typing or computer, and no prolonged standing or sitting greater than 1-2 hours without stretching and short rest."  (*Id*.)

On November 10, 2008, following Dr. Mellilo's evaluation, Sedgwick concluded that Curley was not "totally disabled from any occupation" and terminated her long-term disability benefits.  (*Id*. at 17–19.)  The effective termination date of her benefits was September 1, 2008.  (*Id*.)

On February 20, 2009, Curley appealed Sedgwick's decision.  (Doc. 17-2 at 5.)  As part of the appeal process, Sedgwick reviewed Curley's original claim for benefits as well as her

medical records from Drs. M. Turek Al Fahl, Benjamin Agana, Mark Burhost, Shaun Lehman, Doctor Uday, and Robert Brownhill.  (Doc. 15 at 55.)   Sedgwick shared Curley's medical records, dating back to 2005, with Dr. Robert Pick, an orthopedic surgeon, and with Dr. Jamie Lee Lewis, a physician of physical medicine and rehabilitation.  (*Id.* at 56*.*)  Drs. Pick and Lewis concluded that Curley was well enough to work.  (*Id.* at 60; Doc. 15-1 at 4.)  On March 19, 2009, Sedgwick affirmed its decision to terminate Curley's long-term disability benefits.  (Doc. 15 at 55–57.)

Plaintiff Curley filed the instant suit on January 13, 2010.  (Doc. 1.)  Defendant Sedgwick and Plaintiff Curley now cross-move for summary judgment.  (Docs. 14 and 19.)

II.  Standard of Review

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must

establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998), *overruled* on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006).

Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert.*

*denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075.) The nonmovant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). There is a "genuine" issue of material fact if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## III. Discussion

Where a benefit plan grants the plan administrator discretion to construe the plan's terms or make eligibility determinations, courts apply an abuse of discretion standard to analyze whether the plan administrator acted arbitrarily or capriciously. *Gosselink v. American Tel. & Tel. Inc.*, 272 F.3d 722, 726 (5th Cir. 2001). The Fifth Circuit employs a two-part test to analyze

a plan administrator's interpretation of a benefit plan. *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 637–38 (5th Cir. 1992). Under the two-pronged, six-part *Wildbur* test, the court must first determine the legally correct interpretation of the plan. *Gosselink*, 272 F.3d at 726 (citing *Wildbur*, 974 F.2d at 637–38). To make this determination, the court considers: (1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) whether any unanticipated costs result from different interpretations of the plan. *Id.* If the court determines that the plan administrator's interpretation of the plan is legally correct, the court must then decide whether the administrator's decision was an abuse of discretion under the second prong of *Wildbur*. *Id.* The court considers three factors: (1) the internal consistency of the plan under the administrator's interpretation; (2) any relevant regulations formulated by the applicable administrative agencies; and (3) the factual background of the determination and any inferences of bad faith. *Id.*

Judicial review of a plan administrator's decision is "limited to determining whether there is substantial evidence in the record to support [the administrator's] decision." *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996) (citing *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1306 (5th Cir. 1994)). "A decision is arbitrary when made 'without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 1996), *quoting Bellaire Gen. Hosp.*, 97 F.3d at 828. An administrator's denial of benefits must be "based on evidence, even if disputable, that clearly supports the basis for its denial." *Lain*, 279 F.3d at 342, *quoting Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999). Finally, an ERISA administrator need not assign more weight to the records of a claimant's treating physicians than to the opinions of independent physicians in the record. *Gooden v. Provident life*

& *Accident Ins. Co.,* 250 F.3d 329, 335 (5th Cir. 2001).  "The law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits." *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004) (citing *Meditrust Fin. Servs. Corp. v. Sterling Chem., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)).

Defendant Sedgwick argues that HP afforded it discretionary authority to make determinations regarding a claimant's eligibility for benefits under the Plan.  The Plan states that the plan administrator "processes and reviews claims for benefits under the Plan but does not insure benefits."  (Hewlett-Packard Company Disability Plan, Doc. 15 at 12.)  The court reviews Sedgwick's denial of Curley's long-term benefits for abuse of discretion.  "Our review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness--even if on the low end." *MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 478 (5th Cir. 2003) (internal citation omitted).  Sedgwick examined whether Curley was "totally disabled" as defined by the Plan. Under the Plan, "total disability," means that "following the initial twenty-four month period after onset of the injury or sickness the Participant is continuously unable to perform any occupation for which he is or may become qualified by reason of his education, training, or experience."  (Hewlett-Packard Company Disability Plan, Doc. 15 at 17.)  "[T]he determination of total disability shall be made by the Claims Administrator on the basis of objective medical evidence."  (*Id.* at 18.)

After Curley's disability from October 2004 to September 2007, Sedgwick reassessed her condition.  For the reassessment, as well as during its second evaluation of her condition following Curley's appeal, Sedgwick reviewed Curley's medical records from seven of her treating physicians, the independent medical evaluation from Dr. Mellilo, and opinions from Drs.

8 / 10

Pick and Lewis, who were independently commissioned to review Curley's condition.  (*Id.* at 55–57.)  Curley's treating physician, Dr. Mark Barhost, noted in his records at a November 2007 examination that Curley's condition had improved, and that he "encouraged her to open communication with worker's comp and her disability insurance carrier and seek ways to use their extensive resources to help her achieve further success in transitioning to the workforce." (Doc. 15-1 at 39.)  Dr. Barhorst prescribed that Curley refrain from bending and stooping, as well as from prolonged walking or standing.  (Doc. 18-1 at 6.)  Dr. Mellilo examined Curley in August 2008 and determined "the patient's physical examination is essentially normal."  (Doc. 18 at 35.)  In December 2008, Dr. Barhorst again examined Curley and concluded Curley "has very limited functional ability on a sustained basis and is therefore only marginally employable at best."  (*Id.* at 12.)  At the same visit, Dr. Barhorst suggested Curley undergo a functional capacity evaluation to redefine her specific physical limitations.  (*Id.* at 14.)  He noted that an updated functional capacity evaluation "will probably find that she is capable of a light duty job description once again, but we can get some further stipulations as to what duration of time she could do these things."  (*Id.*)  Dr. Pick reviewed Curley's medical history and concluded "there is a paucity of objective orthopedic findings to validate an inability to engage in full time work in a sedentary to light category."  (Doc. 15 at 60.)  Dr. Lewis reached a similar conclusion in his evaluation of Curley's records, stating there is a lack of "corroborating significant musculoskeletal abnormalities."  (Doc. 15-1 at 4.)

Sedgwick presents substantial evidence from a number of physicians to support its decision to deny Curley disability benefits.  Based on the available medical documentation, Sedgwick reasonably concluded that Curley was not totally disabled under the Plan, and thus its decision was not an abuse of discretion.

IV.  Conclusion

Accordingly, the Court hereby **ORDERS** that Defendant Sedgwick Claims Management

Services, Inc.'s Motion for Summary Judgment (Doc. 14) is **GRANTED**.

Plaintiff Charlene Curley's Motion for Summary Judgment (Doc. 19) is **DENIED.**

**SIGNED at Houston, Texas, this 25th day of July, 2011.**

MELINDA HARMON
UNITED STATES DISTRICT JUDGE